UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID and SARAH HUTCHINSON,<br><br>  Plaintiffs,<br><br>  v.<br><br>REBECCA NALE, KIMBERLY BYRUM, JAMIE JOHNSON, CRYSTAL HOWELL, AARON SIMPSON, and VESNA ALAC,<br><br>  Defendants. | CAUSE NO.   1:24-cv-222 |

## COMPLAINT AND JURY DEMAND

1. David and Sarah Hutchinson ("the Hutchinsons") are a married couple. In 2022, David and his ex-wife, Vesna Alac, were engaged in a custody dispute regarding their sixteen-year-old child, M.H.

2. In March 2022, Vesna told others that David had sexually abused M.H. That allegation was reported by someone other than Vesna to the Indiana Department of Child Services ("DCS"). The accusations against David were false, and Vesna intentionally spread those false accusations with the goal of helping her win her custody dispute with David.

3. DCS opened an investigation of David. Rebecca Nale and her supervisor, Jamie Johnson, were the DCS employees primarily tasked with investigating the allegations. Kimberly Byrum also participated in the investigation. Howell super-

vised the investigation. And Aaron Simpson reviewed the investigation. Those allegations were substantiated in April 2022, but were unsubstantiated in February 2023 during an administrative appeal.

4.  Due process required that Nale, Byrum, Johnson, Howell, and Simpson (collectively the "DCS Defendants") take into account all of the available evidence that tends to show that abuse or neglect did or did not occur. But their abuse investigation was poorly developed and exculpatory evidence was either not obtained or ignored.

5.  The Defendants' actions caused severe damage to the Hutchinsons—alienating the Hutchinsons from M.H., damaging David's ability to work in his profession, and causing severe emotional damage to David and Sarah. The Hutchinsons seek redress from Vesna for her false accusations. Moreover, David seeks redress from the DCS Defendants for violations of his civil rights under federal law and the of Fourteenth Amendments to the United States Constitution.

6.  This action is brought under 42 U.S.C. § 1983.

## THE PLAINTIFFS

7.  The Hutchinsons live in Indiana.

## THE DEFENDANTS

8.  At all times relevant to this complaint, Rebecca Nale ("Nale") was a Family Case Manager for the Orange County DCS Office. Pursuant to 42 U.S.C. § 1983, Nale was acting under color of state law by virtue of her position with DCS.

9. At all times relevant to this complaint, Kimberly Byrum ("Byrum") was a Family Case Manager for the Orange County DCS Office. Pursuant to 42 U.S.C. § 1983, Byrum was acting under color of state law by virtue of her position with DCS.

10. At all times relevant to this complaint, Jamie Johnson ("Johnson") was a Family Case Manager Supervisor for the Orange County DCS Office. Pursuant to 42 U.S.C. § 1983, Johnson was acting under color of state law by virtue of her position with DCS.

11. At all times relevant to this complaint, Crystal Howell ("Howell") was the Local Office Director for the Orange County DCS Office. Pursuant to 42 U.S.C. § 1983, Howell was acting under color of state law by virtue of her position with DCS.

12. At all times relevant to this complaint, Aaron Simpson ("Simpson") was the Local Office Director for the DuBois County DCS Office. Pursuant to 42 U.S.C. § 1983, Simpson was acting under color of state law by virtue of her position with DCS.

13. Vesna lives in Louisville, Kentucky.

## JURISDICTION AND VENUE

14. This Court has original jurisdiction of this action under 28 U.S.C. § 1331 as a civil action arising under the Constitution and laws of the United States.

15. Alternatively, this Court has jurisdiction over the claims against Vesna under 28 U.S.C. § 1332 because she and the Hutchinsons are citizens of different states and the amount in controversy in the claims against Vesna exceed the sum or value of $75,000, exclusive of all interest and costs.

16. This Court has personal jurisdiction over Vesna because she purposefully directed her activities towards Indiana in order to have DCS investigate David in order to strengthen her position in the custody litigation.

17. Venue in this Court is proper under 28 U.S.C. § 1391(a) because this is the judicial district in which a substantial part of the events giving rise to the claims occurred.

## FACTS

18. David and Vesna were married on July 12, 1997.

19. David and Vesna produced one child as a result of their marriage, M.H., who was born in March 2006.

20. David and Vesna divorced on July 12, 2013.

21. After their divorce, David and Vesna engaged in an acrimonious custody battle over M.H., with Vesna filing numerous motions designed to separate David from M.H.

22. Vesna's counsel and the friend of the court were neighbors.

23. During the custody proceedings, M.H. told David about actions by Vesna designed to alienate M.H. from David.

24. Upon information and belief, on or about March 3, 2022, Vesna told others that David had sexually abused M.H.

25. David had not and never has abused M.H. sexually or in any other way.

26. Vesna's statement that David had sexually abused M.H. was false.

27. Approximately three days before these false statements, Vesna had filed a petition to double her child support.

28. David and Vesna were also scheduled to complete a court-ordered custody evaluation very shortly after Vesna's false statements.

29. One of the purposes of that court-ordered custody evaluation was to determine whether Vesna was alienating M.H. from the Hutchinsons.

30. Vesna made the false statement with the intent that it be used in her custody dispute with David.

31. Vesna intended that the false statement be communicated to DCS, so that it could investigate those allegations.

32. On March 3, 2022, DCS received a report that David had sexually abused M.H.

33. Nale was assigned to investigate the report.

34. Johnson and Howell supervised Nale's investigation.

35. During her investigation, Nale was told that the abuse occurred in Sarah's presence.

36. Sarah is a licensed social worker in Kentucky with experience in investigating allegations of all forms of abuse.

37. Nale did not speak with Sarah to determine whether any sexual abuse occurred in Sarah's presence.

38. If Nale had spoken with Sarah has part of her investigation, she would have developed exculpatory information that would have demonstrated that the allegations against David were false.

39. Nale viewed a forensic interview of M.H. as part of her investigation.

40. During that interview, M.H. mentioned the custody dispute between her parents four times.

41. If Nale had investigated the circumstances surrounding the custody and child support dispute, then she would have developed exculpatory information that would have demonstrated that the allegations against David were false.

42. During her interview of M.H., Nale was told that M.H. allegedly told Vesna of the sexual abuse "two weeks ago," but that Vesna had allowed M.H. to stay overnight at David's house within the last few days.

43. If Nale had investigated these inconsistencies, then she would have developed exculpatory information that would have demonstrated that the allegations against David were false.

44. Howell and Simpson were told that one of M.H.'s friends had previously made false allegations of sexual abuse against a parent.

45. Byrum spoke with that friend as part of her investigation.

46. None of the DCS Defendants developed facts showing that this friend had previously made false allegations of sexual abuse against a parent.

47. If DCS Defendants had developed these facts, then they would have had exculpatory information that would have demonstrated that the allegations against David were false.

48. During Nale's investigation, David voluntarily subjected himself to a polygraph examination in which denied that he had sexually abused M.H. The polygraph results indicated that David had been truthful in his answers.

49. During Nale's investigation, she learned that law enforcement was investigating the allegations against David.

50. Nale learned that law enforcement closed the investigation and decided not to file charges against David.

51. If Nale had investigated the reasons why criminal charges were not being filed against David, then she would have developed exculpatory information that would have demonstrated that the allegations against David were false.

52. Nale completed her investigation on or about April 11, 2022.

53. Nale either did not obtain or ignored exculpatory evidence showing that David did not abuse M.H.

54. Nale recommended that DCS substantiate the allegations of abuse against David.

55. When making this recommendation, Nale did not take into account all of the available evidence that tends to show that abuse or neglect did or did not occur.

56. Nale's recommendation was reviewed by Johnson, Howell, and Simpson.

57. Johnson, Howell, and Simpson all agreed with Nale's recommendation.

58. When reaching this conclusion, Johnson, Howell, and Simpson ignored exculpatory evidence showing that David did not abuse M.H.

59. When reaching this conclusion, Johnson, Howell, and Simpson did not take into account all of the available evidence that tends to show that abuse or neglect did or did not occur.

60. On April 19, 2022, Johnson signed an Assessment of Alleged Child Abuse or Neglect ("Form 311") substantiating the abuse allegation against David.

61. As a result of the substantiation, David was placed on the Child Protective Index.

62. Placement on the Child Protective Index changes a person's legal status, which can deprive a person of their ability to find employment in their chosen career.

63. After the allegations against David were substantiated, Vesna successfully used that substantiation to advance her interests in her custody and child support dispute with David.

64. David timely sought an administrative appeal of the substantiations.

65. During the administrative appeal, DCS decided to forego an administrative hearing and unsubstantiated the allegations against David.

66. Howell signed the form unsubstantiating the allegations against David on February 10, 2023.

67. As a result of Defendants' conduct, the Hutchinsons have suffered severe emotional and financial distress, as well as the alienation of their relationship with M.H.

### COUNT I – VIOLATIONS OF 42 U.S.C. § 1983

68. Plaintiffs incorporate by reference the previous allegations in this complaint.

69. The DCS Defendants violated David's Fourteenth Amendment due process right by using procedures that presented an unreasonable risk of an erroneous deprivation of the private interest.

70. The DCS Defendants violated David's Fourteenth Amendment due process right by failing to take into account all of the available evidence that tends to show whether abuse or neglect did or did not occur.

71. The DCS Defendants violated David's Fourteenth Amendment due process right by failing to develop exculpatory evidence when assessing whether David abused M.H.

72. The DCS Defendants violated David's Fourteenth Amendment due process right by failing to consider equally exculpatory and inculpatory evidence when assessing whether David abused M.H.

73. David has been damaged as a result of the DCS Defendants' wrongful conduct.

74. For each violation of 42 U.S.C. § 1983, David seeks to recover the following:

      a.    Compensatory damages in an amount to be determined by a jury;

      b.    Punitive damages in an amount to be determined by a jury;

      c.    Reasonable attorney and expert fees pursuant to 42 U.S.C. § 1988; and

      d.    Any further relief that may be appropriate.

## COUNT II - DEFAMATION

75. Plaintiffs incorporate by reference the previous allegations in this complaint.

76. Vesna made a communication regarding David with defamatory imputation, namely that David has sexually abused M.H.

77. These statements were false.

78. Vesna made these communications with malice for the purpose gaining an advantage in her custody and child support dispute with David.

79. These communications were made to third parties with the intent that they be transmitted to DCS.

80. Plaintiffs have been damaged as a result of Vesna's actions.

81. Plaintiffs seek to recover compensatory damages, punitive damages, and any other relief allowed by law.

## COUNT III – ABUSE OF PROCESS

82. Plaintiffs incorporate by reference the previous allegations in this complaint.

83. Vesna made the false statements about David in order that DCS would initiate administrative proceedings against David.

84. Vesna caused those proceedings to be initiated for an ulterior purpose or motive, i.e., in order to gain an advantage in her custody and child support dispute with David.

85. Vesna's initiation of this process was not proper in the regular conduct of the proceedings.

86. Plaintiffs have been damaged as a result of Vesna's actions.

87. Plaintiffs seek to recover compensatory damages, punitive damages, and any other relief allowed by law.

WHEREFORE, Plaintiffs pray for damages in an amount of money which will fairly and adequately compensate them for all losses, injuries and damages, for the costs of this action, reasonable attorney's fees, and for all other relief just and proper under the circumstances.

## JURY DEMAND

Plaintiffs request a trial by jury.

Respectfully submitted,

WILLIAMS LAW GROUP, LLC

/s/ Brad A. Catlin
Brad A. Catlin, Atty. No. 21570-29
1101 North Delaware St., Suite 200
Indianapolis, IN 46202
Tel: (317) 633-5270
brad@williamsgroup.law

ATTORNEY FOR PLAINTIFFS