UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID HUTCHINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-00222-SEB-MJD |
| | ) |
| REBECCA NALE, | ) |
| KIMBERLY BYRUM, | ) |
| JAMIE JOHNSON, | ) |
| CRYSTAL HOWELL, | ) |
| AARON SIMPSON, | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Now before the Court is Defendants' Motion to Dismiss [Dkt. 17], filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff David Hutchinson has brought this action under 42 U.S.C. § 1983, alleging that Defendants Rebecca Nale, Kimberly Byrum, Jamie Johnson, Crystal Howell, and Aaron Simpson, all employees of the Indiana Department of Child Services ("DCS") (collectively, "Defendants") violated his Fourteenth Amendment rights by conducting an inadequate investigation into child abuse allegations against him. For the reasons detailed below, we <u>GRANT</u> Defendants' motion.

### Factual Background

In 2022, Mr. Hutchinson and his ex-wife, Vesna Alac, were engaged in an acrimonious custody dispute regarding their then-sixteen-year-old child, M.H. Compl. ¶¶ 18–21 On March 3, 2022, Ms. Alac "told others" that Mr. Hutchinson had sexually abused M.H., which allegation was later that same day reported to DCS by someone

1

other than Ms. Alac. *Id.* ¶ 24, 32. Three days prior to making this statement, Ms. Alac had filed a petition seeking to have her child support doubled. *Id.* ¶ 27. Ms. Alac and Mr. Hutchinson were also scheduled to complete a court-ordered custody evaluation sometime shortly thereafter, in part to determine whether she was acting to alienate M.H. from Mr. Hutchinson and his current wife, Sarah ("Mrs. Hutchinson"). *Id.* ¶¶ 28–29. The complaint alleges that Ms. Alac's accusation that Mr. Hutchinson had sexually abused M.H. was false, and that she intentionally spread this false allegation with the intent that it would be communicated to DCS in order to cause DCS to conduct an investigation into Mr. Hutchinson that would advantage her in their custody dispute. *Id.* ¶¶ 25–26, 30–31.

Following the sexual abuse report, DCS opened an investigation into the allegations against Mr. Hutchinson. Ms. Nale, a Family Case Manager in the Orange County DCS office, was assigned to investigate the report. Ms. Johnson, a Family Case Manager Supervisor, and Ms. Howell, the Local Office Director for the Orange County DCS office, supervised Ms. Nale's investigation. Ms. Byrum, who is also a Family Case Manager in the Orange County DCS office, and Mr. Simpson, the Local Office Director for the DuBois County DCS office, each participated in the investigation. *Id.* ¶¶ 3, 8–11, 33–34, 45.

During the investigation, Ms. Nale was told that the abuse had occurred in the presence of Mrs. Hutchinson, who is a licensed social worker in Kentucky with experience in investigating all forms of abuse. *Id.* ¶¶ 35–36. Ms. Nale did not inquire of Mrs. Hutchinson to determine whether any sexual abuse had occurred in her presence. *Id.* ¶ 37. The complaint alleges that, had Ms. Nale spoken with Mrs. Hutchinson, she

2

would have received exculpatory information demonstrating that the allegations against Mr. Hutchinson were false. *Id.* ¶ 38.

As part of her investigation, Ms. Nale also viewed a forensic interview of M.H., during which interview M.H. mentioned four times the custody dispute between her parents. *Id.* ¶¶ 39–40. Ms. Nale was told by M.H. that, although M.H. had told Ms. Vesna about the sexual abuse two weeks prior to the interview, Ms. Vesna had allowed M.H. to stay overnight at Mr. Hutchinson's home during the previous few days. *Id.* ¶ 42. The complaint alleges that, had Ms. Nale investigated the circumstances surrounding the custody and child support dispute and the inconsistencies in M.H.'s statements, Ms. Nale would have developed exculpatory information demonstrating that the allegations against Mr. Hutchinson were false. *Id.* ¶¶ 41, 43.

Also as part of the investigation, Ms. Howell and Mr. Simpson were informed that one of M.H.'s friends had previously made false allegations of sexual abuse against a parent. *Id.* ¶ 44. Although Ms. Byrum subsequently spoke with that friend as part of the investigation, none of the DCS Defendants developed facts showing that the friend had previously made such false allegations. *Id.* ¶¶ 45–46.

During the DCS investigation, Mr. Hutchinson voluntarily underwent a polygraph examination in which he denied that he had sexually abused M.H. The polygraph results indicated that Mr. Hutchinson had been truthful in his answers. *Id.* ¶ 48. Concurrent with the DCS investigation, law enforcement was also investigating the sexual abuse allegations. The law enforcement investigation ultimately was closed without charges being filed against Mr. Hutchinson. The complaint alleges that, had Ms. Nale

3

investigated the reasons criminal charges were not filed against Mr. Hutchinson, she would have developed exculpatory information demonstrating that the allegations against Mr. Hutchinson were false. *Id.* ¶¶ 49–51.

Ms. Nale completed her investigation on April 11, 2022, and recommended that DCS substantiate the allegations of abuse against Mr. Hutchinson. *Id.* ¶¶ 52, 54. The complaint alleges that, in doing so, Ms. Nale either failed to obtain or ignored exculpatory evidence showing that Mr. Hutchinson did not abuse M.H. *Id.* ¶ 55. Ms. Nale's recommendation was reviewed by Ms. Johnson, Ms. Howell, and Mr. Simpson, all of whom agreed with the recommendation, allegedly likewise failing to account for all the evidence tending to show that no abuse or neglect occurred. *Id.* ¶¶ 56–59. On April 19, 2022, Ms. Johnson signed an Assessment of Alleged Child Abuse or Neglect ("Form 311") substantiating the abuse allegations against Mr. Hutchinson. *Id.* ¶ 60. As a result of the substantiation, Mr. Hutchinson was placed on the Child Protective Index and Ms. Alac used the substantiation to advance her interests in their custody and child support dispute. *Id.* ¶ 61.

Following the substantiation, Mr. Hutchinson timely sought an administrative appeal. *Id.* ¶ 64. While the appeal was pending, DCS decided to forego an administrative hearing, and, on February 10, 2023, unsubstantiated the allegations against Mr. Hutchinson. *Id.* ¶ 65. At discussed above, law enforcement concurrently investigated the allegations against Mr. Hutchinson, and the prosecutor ultimately declined to bring charges and the investigation was closed. *Id.* ¶¶ 49–50. Mr. Hutchinson alleges that, as a result of Defendants' conduct, he has suffered severe

emotional and financial distress as well as the alienation of his relationship with M.H. and that his "ability to work in his profession" has been damaged. *Id.* ¶ 5.

On February 1, 2024, Mr. Hutchinson filed the instant complaint against Defendants under 42 U.S.C. § 1983, alleging that Defendants' actions violated his Fourteenth Amendment due process rights.[1] Now before the Court is Defendants' motion to dismiss, which is fully briefed and ripe for ruling.

## Legal Analysis

### I.   Rule 12(b)(6) Standard

Defendants have filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In this procedural context, the Court accepts as true all well-pled factual allegations in the complaint and draws all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* FED. R. CIV. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Although other parties and claims were originally part of this litigation, Mr. Hutchinson's procedural due process claim against the DCS Defendants is the only claim remaining.

5

## II. Discussion

Mr. Hutchinson alleges in the complaint that Defendants conducted a "sham" investigation into the abuse allegations levied against him, in violation of his procedural due process rights.² Specifically, Mr. Hutchinson claims that Defendants substantiated the allegations of abuse without considering and/or developing exculpatory evidence tending to show that no abuse had occurred. He alleges that Defendants' failures resulted in emotional damage, damage to his "ability to work in his profession," and allowed Ms. Alac to unfairly "advance her interests in her custody and child support dispute with [him]." Compl. ¶¶ 5, 63.

Defendants have moved to dismiss Mr. Hutchinson's complaint on the grounds that he has failed to plausibly allege either that he was deprived of a cognizable liberty or property interest or that the alleged deficiencies in Defendants' investigation are violative of due process. Defendants further argue that, even assuming Mr. Hutchinson plausibly alleged a procedural due process claim, they are entitled to qualified immunity because their alleged actions and inactions were not clearly established constitutional violations.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process

---

² Although Mr. Hutchinson does not expressly state that he is alleging a violation of only his procedural due process rights, his arguments are all based on a "stigma plus" theory, which is not a substantive due process argument. *See Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 502 (6th Cir. 2007) (citing *Paul v. Davis*, 424 U.S. 693, 701 n.5 (1976)) ("[T]he stigma-plus test is used to determine whether state action violates an individual's *procedural* due process rights.") (emphasis added). Accordingly, we understand him to be pursuing only a procedural due process claim.

Clause of the Fifth and Fourteenth Amendments." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333. To state a procedural due process claim, a plaintiff must plausibly allege "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008) (citation omitted).

Here, Mr. Hutchinson alleges a deprivation of his liberty interests under a "'stigma-plus' theory of harm." *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024). "A stigma-plus deprivation involves 'an injury to [a plaintiff's] reputation' plus 'a change in legal status.'" *Id.* (quoting *Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015). Mr. Hutchinson alleges that Defendants' child abuse substantiation based on a "sham" investigation injured his reputation and also changed his legal status because it deprived him of his occupational liberty and enabled his ex-wife to unfairly further her interests in their custody and child support dispute, thereby alienating him from M.H. We address each of these arguments in turn below.

To state a stigma-plus claim based on occupational liberty, a plaintiff must plausibly allege that "(1) the defendant[s] made stigmatizing comments about him; (2) those comments were publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010) (citation omitted). Even assuming that Mr. Hutchinson has adequately alleged that Defendants publicly disclosed stigmatizing information about him, he has failed to allege sufficient facts to plausibly suggest that he suffered a tangible

7

loss of employment opportunities as a result of Defendants' substantiating the child abuse allegation against him. The complaint states in cursory fashion only that Defendants' actions damaged his "ability to work in his profession" and that placement on the Child Protection Index "changes a person's legal status, which *can* deprive a person of their ability to find employment in their chosen career." Compl. ¶¶ 5, 62 (emphasis added). These vague allegations, which fall short of identifying the profession in which Mr. Hutchinson is employed and are supported by no facts specifying how Mr. Hutchinson's employment was negatively affected by the child abuse substantiation and his placement on the Child Protection Index, are not sufficient to plausibly allege that any action by Defendants deprived Mr. Hutchinson of his occupational liberty interest.

      Nor has Mr. Hutchinson adequately alleged any other change in his legal status which combined with the injury to his reputation caused by the child abuse substantiation "justif[ies] the invocation of procedural safeguards." *Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013) (quotation marks and citation omitted). Mr. Hutchinson claims only that Defendants' substantiation of the child abuse allegations changed his legal status because Ms. Alec "successfully used that substantiation to advance her interests in her custody and child support dispute with [him]." Compl. ¶ 63. This vague and conclusory allegation is not sufficient to plausibly allege that he suffered any change in legal status because of Defendants' actions. Mr. Hutchinson does not allege, for example, that the substantiation caused him to lose custody of M.H., lose parental rights, or even lose visitation rights. Nor does Mr. Hutchinson allege that Defendants made any attempt to interfere with the child custody proceedings in Kentucky or that they communicated the

substantiation to any Kentucky official or any other individual with the intent that that party would relay the substantiation to the Kentucky court. Without alleging any facts to suggest that the "successful[] … advance[ment]" of his ex-wife's interests in the child custody proceedings in some way altered his legal status or extinguished a right he previously had under state law, Mr. Hutchinson does not plausibly allege a stigma-plus due process claim. While there can be no dispute that there is a liberty interest in family relations, Mr. Hutchinson has not alleged sufficient facts to plausibly suggest that Defendants' actions deprived him of that interest.[3]

### III.   Conclusion

For the reasons detailed above, Defendants' Motion to Dismiss [Dkt. 17] is <u>GRANTED</u> without prejudice. If Plaintiff opts not to file an amended complaint that cures the deficiencies addressed in this order within forty (40) days, our dismissal will be converted to a dismissal with prejudice.

IT IS SO ORDERED.

Date:   _____12/16/2024_____            _____
                                          SARAH EVANS BARKER, JUDGE
                                          United States District Court
                                          Southern District of Indiana

---

[3] Because we find that Mr. Hutchinson has failed to state a claim upon which relief may be granted, we need not and do not address Defendants' qualified immunity argument.

Distribution:

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Brad A. Catlin
Williams Law Group, LLC
brad@williamsgroup.law

Kirsten Rene Daniel
CLAY DANIEL WALTON & ADAMS, PLC
kirsten@justiceky.com

Stephanie Michelle Davis
Office of Attorney General Todd Rokita
stephanie.davis@atg.in.gov

Katherine A Meltzer
Office of Indiana Attorney General
katherine.meltzer@atg.in.gov

Sidney Maria Vieck
Winner Law Group, LLC
vieck@louisvillefamilylaw.com

Louis Winner
Winner Law Group
winner@louisvillefamilylaw.com