UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAVID HUTCHINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00222-SEB-MJD |
| | ) | |
| REBECCA NALE, | ) | |
| KIMBERELY BYRUM, | ) | |
| JAMIE JOHNSON, | ) | |
| CRYSTAL HOWELL, | ) | |
| AARON SIMPSON. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

On April 19, 2022, the Indiana Department of Child Services ("DCS") substantiated Form 311 "Child Abuse or Neglect" allegations made against Plaintiff David Hutchinson. Am. Compl. ¶ 53, dkt. 82. As a result, Mr. Hutchinson was placed on the Child Protective Index (the "Index") for approximately ten months. *Id.* ¶ 55. On February 10, 2023, following Mr. Hutchinson's successful administrative appeal within DCS, the allegations were unsubstantiated, and his name was removed from the Index. *Id.* ¶ 64.

Mr. Hutchinson now brings this action against four employees of the Orange County, Indiana, DCS Office: Rebecca Nale, the Family Case Manager assigned to investigate the allegation; Kimberly Byrum, another Family Case Manager; Jamie Johnson, a Family Case Manager Supervisor; and Crystal Howell, the Local Office

1

Director. *Id.* ¶¶ 8–11. Mr. Hutchinson additionally brings this action against Aaron Simpson, the Local Office Director for the DuBois County DCS Office (the five DCS employees are collectively hereinafter referred to as the "Defendants"). *Id.* ¶ 12. Mr. Hutchinson sues each Defendant in their respective individual capacities under 42 U.S.C. § 1983, alleging that they deprived him of certain liberty interests afforded to him under the due process clause of the Fourteenth Amendment of the Constitution. *Id.* ¶ 67. Defendants have moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. *See* Dkt. 91. For the following reasons, the Court <u>DENIES</u> Defendants' Motion to Dismiss.

### **Factual Background**[1]

In July 2013, Plaintiff David Hutchinson and his now ex-wife, Vesna Alac, sought a divorce, from which an "acrimonious" and yearslong custody battle over their daughter, M.H., ensued. Am. Compl. ¶¶ 17–18. In March of 2022, amidst the ongoing custody battle, an unnamed individual reported to the Indiana Department of Child Services that Mr. Hutchinson had sexually abused M.H., which allegation he denies. *Id.* ¶¶ 19–21. DCS assigned Ms. Nale to investigate, and after completing her investigation, on April 11, 2022, she recommended that DCS substantiate the allegations of abuse. *Id.* ¶ 23, 45, 47.

---

[1] We include here only those facts relevant to the question at issue in Defendants' motion to dismiss, to wit, whether Plaintiff has adequately alleged that he has a cognizable liberty interest in either his occupation or familial relations.

Ms. Nale's recommendation was reviewed and approved in turn by Ms. Johnson, Ms. Howell, and Mr. Simpson, respectively. *Id.* ¶ 50. Eight days later, Ms. Johnson signed Form 311, Assessment of Alleged Child Abuse or Neglect, formally substantiating the claim against Mr. Hutchinson. *Id.* ¶ 53. As a result of the substantiation, Mr. Hutchinson's name was placed on the Index. *Id.* ¶ 55.

Mr. Hutchinson's name remained on the Index for approximately ten months. *See id.* ¶ 55, 64. At one point during this period, Ms. Nale provided a copy of the substantiation findings to Ms. Alac, supposedly with the knowledge that Ms. Alac would relay this information to the family court for the purpose of limiting Mr. Hutchinson's custody of M.H. *Id.* ¶¶ 59–60. Ms. Alac did just this, and Mr. Hutchinson lost his visitation rights and custody of M.H. soon thereafter. *Id.* ¶ 61.

Following his placement on the Index, Mr. Hutchinson was diagnosed with post-traumatic stress disorder ("PTSD") and adjustment disorder.  Mr. Hutchinson worked as a commercial airline pilot at that time and these diagnoses prevented him from continuing in his paid employment on account of federal laws mandating his reporting of these disqualifying health conditions. *Id.* At the time his name was added to the Index, Mr. Hutchinson also performed unpaid work as a Federal Flight Deck Officer ("FFDO").  In that role, Mr. Hutchinson was required to self-report any changes in circumstances that could affect his eligibility to remain in the FFDO program, which included placement on the Index. *Id.* Prior to having his name added to the Index, in addition to his work as a pilot and FFDO, Mr. Hutchinson had been offered a law enforcement position in Orange County, Indiana. *Id.* Although he declined that specific position at the time, he remained

generally interested in pursuing a career as a police officer but became discouraged from reapplying once his name was added to the Index out of concern that any background check would reveal his placement on the Index, disqualifying him from consideration for a law enforcement position. *Id.*

During the substantiation period, Mr. Hutchinson timely filed an administrative appeal within DCS to unsubstantiate the allegation. *Id.* ¶ 62. DCS elected to forgo an administrative appellate hearing and ultimately concluded that the allegations were to be unsubstantiated. *Id.* ¶ 63. As a result, Ms. Howell formally unsubstantiated the allegations against Mr. Hutchinson on February 10, 2023. *Id.* ¶ 64. This act presumably had the effect of removing Mr. Hutchinson's name from the Index. However, Mr. Hutchinson alleges that his severe emotional and financial distress, as well as the alienation of his relationship with M.H., have long lingered after the abuse allegations were unsubstantiated. *Id.* ¶ 65.

Mr. Hutchinson filed the Amended Complaint with this court on February 18, 2025. Am. Compl., dkt. 82. It sets forth one count under 42 U.S.C. § 1983, alleging that Defendants' actions, as detailed above, constituted a violation of Mr. Hutchinson's Fourteenth Amendment due process rights. *Id.* ¶¶ 67–70.  Specifically, Mr. Hutchinson alleges that the substantiation changed his legal status and deprived him of his occupational and familial liberty interests.  Mr. Hutchinson seeks both compensatory and punitive damages, attorney fees under 42 U.S.C. § 1988, and any further relief that may be appropriate. *Id.* ¶ 72.

Defendants filed their Motion to Dismiss the Amended Complaint, dkt. 91, along with their Brief in Support, on April 1, 2025, dkt. 92. Plaintiff filed his Response in Opposition to Defendant's Motion to Dismiss on April 22, 2025. Dkt. 97. Defendants filed their Reply in Support to their Motion to Dismiss on April 29, 2025. Dt. 101. This order now follows.

## <u>Legal Analysis</u>

### I.    Standard of Review

When considering whether a plaintiff has failed to state a claim upon which relief can be granted under Rule 12(b)(6), the Court accepts as true all well-pled factual allegations in the complaint and draws all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).  Nevertheless, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *see* Fed. R. Civ. P. 8(a)(2). While the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014), the claim asserted must still be based on a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). If the factual allegations of the complaint, taken as true, do not support a legally cognizable claim for relief, the Court will grant dismissal. *See id.*

### II.    "Stigma Plus" Due Process Claim[2]

---

[2] We note as a threshold matter that the availability of an administrative appeal process—and Mr. Hutchinson's successful use of it in this case—does not preclude the independent conferral of § 1983 liability generally. Indeed, the Court has declared that "the existence

Mr. Hutchinson alleges in the amended complaint that Defendants conducted an inadequate investigation into the abuse allegations levied against him, in violation of his procedural due process rights.  Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth and Fourteenth Amendments." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333.  To state a procedural due process claim, a plaintiff must plausibly allege "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008) (citation omitted).

Here, Mr. Hutchinson alleges a deprivation of his liberty interests under a "'stigma-plus' theory of harm." *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024).  "A stigma-plus deprivation involves 'an injury to [a plaintiff's] reputation' plus 'a change in legal status.'" *Id.* (quoting *Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015).  When a

---

of a state administrative remedy does not ordinarily foreclose resort to § 1983." *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 427–28 (1987). In *Monroe v. Pape*, the Court held that "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." 367 U.S. 167, 183 (1961); *see also Patsy v. Bd. of Regents*, 457 U.S. 496, 507 (1982) ("[T]he 1871 Congress did not intend that an individual be compelled in every case to exhaust state administrative remedies before filing an action under [§ 1983].") Applied here, Mr. Hutchinson did not forfeit his rights to bring this action by pursuing his right to appeal the substantiation of his claim through DCS. Nor does the success of that appeal foreclose his ability to bring this § 1983 claim.

plaintiff claims that he has been deprived of a protected liberty interest arising from reputational or stigmatic damage, he is required to show that "the state inflicted reputational damage *accompanied by* an alteration in legal status that deprived him of a right he previously held." *Doe v. Purdue Univ.*, 928 F.3d 652, 661 (7th Cir. 2019) (emphasis added). Such liberty interests "attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law," *Paul v. Davis*, 424 U.S. 693, 710 (1976), and a plaintiff is entitled to constitutional protections in the stigma-plus context when the change in legal status due to the reputational damage carries the potential to "remove or significantly alter that protected status." *Id.* at 711.

Mr. Hutchinson alleges that Defendants' child abuse substantiation based on an inadequate investigation and his subsequent placement on the Index injured his reputation and also changed his legal status because it deprived him of his occupational liberty and enabled his ex-wife to unfairly further her interests in their custody and child support dispute, resulting in a loss of visitation rights and custody of M.H., thereby depriving him of his liberty interest in parental-child association.

We turn first to address whether Mr. Hutchinson has stated a plausible claim that he suffered a deprivation of his occupational liberty interest. To state a stigma-plus claim based on occupational liberty, a plaintiff must plausibly allege that "(1) the defendant[s] made stigmatizing comments about him; (2) those comments were publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010) (citation omitted). Defendants challenge only the third of these requirements in their motion to dismiss,

arguing that Mr. Hutchinson has failed to adequately allege that he suffered a tangible loss of employment opportunities as a result of the public disclosure of the child abuse substantiation. A showing of tangible loss of employment opportunities as a result of the alleged stigmatic injury is a "high hurdle." *Biggs v. Chicago Bd. of Educ.*, 82 F.4th 554, 560 (7th Cir. 2024), and requires a showing that the reputational harm made it "virtually impossible" for the plaintiff to find employment in his chosen profession. *Id.* (citing *Ratliff v. City of Milwaukee*, 795 F.2d 612, 625–26 (7th Cir. 1986).

Here, Mr. Hutchinson claims that his placement on the Index prevented him from pursuing law enforcement opportunities, specifically as a police officer. He alleges that, before his name was added to the Index, he was offered a law enforcement position by the Orange County Sheriff's Office. Although he declined the offer at that time,[3] Mr. Hutchinson remained interested in pursuing law enforcement opportunities as a career. However, once his name was added to the Index, he claims that he was prevented from applying for other law enforcement opportunities despite his interest in the same, because he knew that his placement on the Index would have shown up on a background check and disqualified him from those positions.

Defendants argue that these allegations are insufficient to plausibly allege a stigma-plus claim because "law enforcement was not [Mr. Hutchinson's] profession" and

---

[3] As Mr. Hutchinson had not yet been added to the Index as the time he declined the offer of employment from the Orange County Sheriff's Office, he does not argue (nor could he) that his placement on the Index caused him to decline that offer.

"he cannot show the substantiation made it virtually impossible for him to pursue a chosen new law enforcement profession when he never pursued it."  Dkt. 92 at 8.

It is true, as Defendants argue, that Mr. Hutchinson alleges that his primary career at the time he was placed on the Index was as a commercial airline pilot, not a law enforcement officer.  However, Mr. Hutchinson alleges that, in addition to his work as a commercial airline pilot, he held a law enforcement-adjacent role as a volunteer Federal Flight Deck Officer, and that, at the time his name was added to the Index, he had been applying for law enforcement positions and intended to continue to pursue law enforcement opportunities.  The parties have not identified a case, nor have we found one, holding that a plaintiff can have an occupational liberty interest only in the specific occupation he held at the time of the reputational harm.  *See Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) (finding that plaintiff had an occupational liberty interest in a Navy career, even though he was still in school and had not yet been accepted, nor had even applied, to any Naval position).

Nor does the fact that Mr. Hutchinson apparently never actually applied for any law enforcement position while he was on the Index doom his claim at this stage of the litigation.  We find plausible Mr. Hutchinson's allegation that, after the substantiation, he was prevented from pursuing law enforcement opportunities because he knew that a background check would reveal his placement on the Index, thereby disqualifying him from consideration for such a position.

Defendants cite *Malhotra v. University of Illinois at Urbana-Champaign*, 77 F.4th 532 (7th Cir. 2023), in support of their contention that merely alleging that one's career

prospects "may" be affected without having applied for any position in the chosen field is insufficient to plausibly allege a tangible loss of employment opportunities as is required to state a stigma-plus claim.  In *Malhotra*, the plaintiff alleged that he "*may* suffer harm to his future career prospects" as a healthcare consultant because the university will "invariably" disclose his wrongful yearlong suspension record to employers. *Id.* at 537, 538. The Seventh Circuit found the plaintiff's stigma-plus claim "too speculative to plausibly suggest that it will be virtually impossible for him" to find a job in that field, reasoning that "[Malhotra] has not alleged that he applied to these schools or jobs yet none would take him" and "it is far from clear that [employers] would reflexively turn Malhotra away for this reason." *Id.* at 538.

However, in *Malhotra*, the plaintiff endured only a yearlong suspension for underage drinking and violation of COVID rules. It is not reasonable to equate this offense, albeit serious, with being labeled as a child abuser and being placed on a list of the same. Whereas the former may make it more difficult to seek employment as a healthcare consultant, it is plausible that the latter would make it virtually impossible to seek employment as a law enforcement officer. The facts alleged here are therefore more closely analogous to those presented in *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603 (7th Cir. 2002), where the plaintiffs, both of whom worked in the childcare profession and had their names added to a list for child abuse or neglect, were found to have plausibly alleged deprivations of their occupational liberty interests.  The *Doyle* plaintiffs' stigma-plus due process claim alleged that "in performing background checks on prospective employees, most, if not all, child-care providers contact the central

10

register to determine if the applicant has been indicated for abuse or neglect. Once a prospective employer learns of the indicated finding, it is reluctant to ignore state laws that 'strongly discourage or effectively prohibit' the hiring of an individual recorded in the central register." *Id.* at 617. The Seventh Circuit found that "these allegations, if proven, would establish that the indicated findings infringed upon [the plaintiffs'] liberty interests to pursue the occupation of their choice, child-care services." *Id.*

Mr. Hutchinson's amended complaint plausibly alleges in the law enforcement context an analogous scenario to that alleged in *Doyle*, to wit, that a background check (which it is plausible to assume would be performed prior to hiring a law enforcement officer) *would* reveal his placement on the Index and *would* have disqualified him from consideration. Whether Mr. Hutchinson can prove these allegations is a question for a later date; at this stage, we assume these allegations to be true. Therefore, this court distinguishes the circumstances in this case from those in *Malhotra*, where the plaintiff alleged only that his future job prospects *might* be affected. For these reasons, we find that Mr. Hutchinson has adequately alleged that, due to the wrongful conduct of Defendants, he suffered a "tangible loss" of employment opportunities in that he has alleged sufficient facts to support a plausible inference that his placement on the Index would have made it "virtually impossible" for him to pursue a career as a police officer, given his allegation that the information would appear on any background check and disqualify him from consideration.

Having found that Mr. Hutchinson has stated a plausible stigma-plus due process claim based on an alleged deprivation of his occupational liberty interest in a law

11

enforcement career, we do not proceed further to address Defendants' arguments regarding the sufficiency of Mr. Hutchinson's allegations regarding other liberty interests that he contends were also affected by Defendants' actions. "At summary judgment, the court can 'identify each claim or defense—or the part of each claim or defense—on which summary judgment is sought' to winnow issues for trial." *Haug v. Bierly*, No. 3:25cv314 DRL-SJF, 2025 WL 2493986, at \*4 (N.D. Ind. Aug. 28, 2025) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)). At the pleading stage, however, the law "doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL*, 809 F.3d at 325 (emphasis in original). Where, as here, "a plaintiff states a plausible claim for relief under one discernable legal theory, 'we start and end there.'" *Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025) (quoting *Bilek v. Fed Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021)).

### III. Conclusion

For the reasons detailed above, Defendants' Motion to Dismiss is <u>DENIED</u> [Dkt. 91]. The case will proceed accordingly and Defendants' pending summary judgment motion will be addressed in due course.

IT IS SO ORDERED.

Date: _____3/30/2026_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

12

Distribution:

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Brad A. Catlin
Williams Law Group, LLC
brad@williamsgroup.law

Kirsten Rene Daniel
CLAY DANIEL WALTON & ADAMS, PLC
kirsten@justiceky.com

Christopher McNally
Office of Indiana Attorney General
christopher.mcnally@atg.in.gov

Katherine A Meltzer
Office of Indiana Attorney General
katherine.meltzer@atg.in.gov

Sidney Maria Vieck
Peak Legal Advocacy, LLC
sidney@peaklegaladvocacy.com

Louis Winner
Winner Law Group
winner@louisvillefamilylaw.com